**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jackson T.C.,

Petitioner,

v.

Todd Blanche, acting U.S. Attorney General; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; David Venturella, Acting Director of Immigration and Customs Enforcement; David Easterwood, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement,

Respondents.

Case No. 26-cv-2811 (ECT/SGE)

**REPORT & RECOMMENDATION**

---

This matter is before the Court on Jackson T.C.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] (Pet., Dkt. No. 1.) This Petition has been referred to the undersigned for a report and recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that Jackson's Petition be granted in part and denied in part.

---

[1] Pursuant to this District's policy in immigration cases, the Court identifies Petitioner only by his first name and last initials.

## BACKGROUND

Jackson is a citizen of Venezuela. (Pet. ¶¶ 7, 15.) He entered the United States unlawfully in October 2021 seeking asylum. (*Id.* ¶ 15.) He was paroled into the United States temporarily without formal admission. (Robinson Decl. Ex. A.) The Department of Homeland Security ("DHS") initiated removal proceedings against Jackson in November 2021. (*Id.* Ex. B.) In June 2022, Jackson filed applications for asylum and withholding of removal under the Convention Against Torture (CAT) treaty, both of which remain pending. (Pet. ¶ 15.) In August 2025, immigration officials granted Jackson a work permit that is valid through 2030. (*Id.*)

Jackson lives and works in the Chicago area with his family. In October 2025, he temporarily left Chicago for Minnesota to avoid work disruptions caused by Immigration and Customs Enforcement ("ICE") Operation Midway Blitz. (*Id.* ¶ 17.) On February 20, 2026, the Elk River Police Department arrested Jackson for criminal sexual conduct. (*Id.* ¶ 20; Robinson Decl. Ex. ¶ 7.) He was taken to the Sherburne County Jail. (Pet. ¶ 20.) The same day, ICE officials issued a warrant for Jackson's arrest and an immigration detainer based on his ongoing removal proceedings. (Robinson Decl. ¶¶ 8, 9; *id.* Exs. C, D.)

On February 23, 2026, Jackson was charged in Sherburne County with two counts of criminal sexual conduct and one count of domestic assault. (*Id.* ¶ 10.) Those charges were dismissed on May 20, 2026. (*Id.* ¶ 11.) On his release, Jackson was immediately arrested by ICE officers based on the ICE warrant and detainer issued in February. (*Id.*)

After processing him at the Whipple Building, ICE returned Jackson to the Sherburne County Jail, where he remains. (*Id.* ¶¶ 21, 23.)

As noted, DHS commenced removal proceedings in November 2021, under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Robinson Decl. Ex. B, at 4.) A hearing before an immigration judge was scheduled for June 16 , 2026. (Robinson Decl. ¶ 13.) The parties have not updated the Court as to what, if anything, occurred at the hearing.

On June 1, 2026, Jackson filed this Petition[2] challenging his arrest and custody as unconstitutional and seeking his immediate release. He claims that his arrest violated the Fourth Amendment and the Accardi doctrine and that his continued detention violates the Due Process clause of the Fifth Amendment. Respondents oppose the Petition, arguing that Jackson is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) as a noncitizen present in the United States without lawful admission and is therefore subject to mandatory detention.

## ANALYSIS

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v.*

[2] Respondents argue that the Petition should be denied because it has not been verified. In response, counsel for Jackson filed a declaration (1) explaining that the failure to verify the Petition was an oversight on his part, and (2) verifying that the factual statements in the Petition are correct to the best of his knowledge. (Suitor Decl. ¶¶ 4, 7.) The Court finds that the verification issue has thus been remedied and does not support denial of the Petition. *See Vu V.L. v. Mullin*, No. 26-CV-2947 (LMP/JFD), Dkt. 8, at 7 (D. Minn. July 1, 2026) (declining to deny a habeas petition "simply because it lacks [the petitioner's] John Hancock").

*Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions under 28 U.S.C. § 2241. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

A writ of habeas corpus can be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3):

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 693 (citations omitted). The distinction between a noncitizen who has "effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* The petitioner bears the burden to prove that his detention is illegal by a preponderance of the evidence. *Belsai D.S. v. Bondi*, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

The Court turns first to Jackson's due process claim, as it is dispositive. Jackson argues that his continued detention violates his right to due process under the Fifth Amendment and should be analyzed using the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Respondents contend that the *Mathews* test is inapplicable because, among other things, the government can detain a noncitizen for as long as deportation proceedings are still pending without running afoul of due process, as held in *Banyee v. Garland*, 115 F.4th 928, 931–933 (8th Cir. 2024).

The Judges in this District, save one, have concluded that *Banyee* does not foreclose applying the *Mathews* balancing test in these circumstances. *See, e.g., Felipe S.P. v. Blanche*, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *5-6 (D. Minn. July 2, 2026); *Rey A. v. Blanche*, No. 26-CV-2287 (NEB/JFD), 2026 WL 1678230, at *5 (D. Minn. May 29, 20206), *Report and Recommendation adopted by* 2026 WL 1683219 (D. Minn. June 10, 2026); *Jesus Alejandro G. A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *6 (D. Minn. May 18, 2026); *Manuel G. v. Blanche*, No. 26-CV-2385 (SRN/ECW), 2026 WL 1256358, at *3 (D. Minn. May 7, 2026); *Axel J.M.C. v. Stanski*, No. 26-CV-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026); *Orlando R.V.V. v. Blanche*, No. 26-CV-1903 (MJD/SGE), Dkt. 11 (D. Minn. Apr. 28, 2026); *but see Brayam G.G. v. Bondi*, No. 26-CV-1985 (DMT/EMB), Dkt. 22 ¶ 8 (D. Minn. Apr. 15, 2026). The Court agrees with the majority approach and will proceed accordingly.

It is beyond dispute that Jackson is entitled to due process of law. The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The United States Supreme Court has determined that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (holding that "'[it] is well established that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 321.

Respondents argue that the first factor, the private interest that will be affected by the official action, weighs in their favor. They specifically argue that Jackson's fundamental rights are not implicated because, as a noncitizen, he does not have any rights in this context. (Dkt. 5, at 20.) The Court disagrees. A person's interest in being free from detention is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Jackson is currently held at Sherburne County Jail, where he has been since early February 2026. It cannot be disputed that he is detained under conditions that resemble criminal incarceration. *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) ("When assessing [the first factor], courts consider conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration."). Jackson is being detained away from his family, and he lacks freedom and the ability to earn an income. Accordingly, the first *Mathews* factor favors Jackson.

The second *Mathews* factor considers the risk of an erroneous deprivation of liberty and "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." *Selvin Adonay E.M. v. Noem*, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing *Mathews*, 424 U.S. at 335). The Court finds that "a substantial risk of erroneous deprivation of liberty exists" for a noncitizen, like Jackson, "who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States" when he is detained without an individualized determination. *Rodriguez Brizuela v. Noem*, Case No. 5:26-cv-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026). And although detention during removal proceedings is constitutionally permissible, "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." *Jesus Alejandro G.A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (cleaned up). An individualized hearing would give both parties an opportunity to be heard as to whether Jackson's continued detention is necessary to advance the regulatory goals of pre-removal detention.

The third *Mathews* factor is the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 226. The Court is mindful of the government's legitimate interest but does not agree that such interest supersedes a detainee's due process rights. Further, the Court is unpersuaded that Respondents' interests

are "subverted by requiring the minimal procedural safeguard of a bond hearing." *Manuel G. v. Blanche*, Case No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *5 (D. Minn. May 7, 2026). As noted, granting Jackson a bond hearing will give both sides an opportunity to present arguments as to continued detention. This safeguard will "reduce the risk of erroneous deprivation without imposing significant burdens on the Government." *Selvin*, 817 F. Supp. 3d at 734.

The Court concludes that the *Mathews* factors weigh in Jackson's favor and that mandatory detention under § 1225(b)(2)(A), as applied to Jackson in this case, violates his constitutional right to procedural due process.[3] The appropriate remedy for such a constitutional deprivation is an opportunity to be heard, which is the equivalent of a bond hearing.[4]

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[3] Because the Court determines that Jackson's Due Process argument requires granting relief, the Court does not reach his arguments under the Fourth Amendment and related claim under *Accardi*. *Faysal N. v. Noem*, Case No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026). The Court notes, however, that given the warrant and detainer underlying his arrest, Jackson is unlikely to prevail on those arguments.

[4] The Court understands that the immigration court could determine that it lacks jurisdiction over Jackson's bond determination in light of *Avila*, as it did in *David J.C.P. v. Blanche*, No. 26-CV-2181 (DWF-ECW), Dkts. 18-1, 19 at 2-3 (D. Minn. May 14, 2026). In that case, the Court held that the immigration court hearing did not "satisfy the Court's order requiring that Respondents provide Petitioner with a bond hearing." *Id.* Dkt. 19, at 2. Should that be the case here, the Court should consider recommending Jackson's immediate release, as the Court did in *David J.C.P.* *Id.* at 3.

1. The Petition (Dkt. No. 1) be **GRANTED IN PART** as follows:

   a. Petitioner's detention without an individualized bond hearing under § 1225(b)(2) be determined to violate his due process rights;

   b. Respondents be ordered to provide Petitioner with a bond hearing within one week after issuance of the Court's Order;

   c. Respondents be ordered to file notice of such bond hearing directly with the Court within two hours of its scheduling;

   d. If a bond hearing takes place that results in Petitioner's release, Respondents be ordered to:

      i. Release Petitioner to Minnesota;

      ii. At a safe time and place communicated at least two hours in advance to Petitioner's counsel; and

      iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys, and the like;

   e. If a bond hearing does not take place as ordered, the Respondents be ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 2(c) above;

2. Respondents be ordered to file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions related to release; and

3. The remainder of the Petition be **DENIED WITHOUT PREJUDICE**.

Dated: July 27, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).