UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jackson T.C.,

Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; David J. Venturella, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,

Respondents.

File No. 26-cv-02811 (ECT/SGE)

**OPINION AND ORDER**

---

Magistrate Judge Shannon G. Elkins issued a Report and Recommendation on July 27, 2026. ECF No. 10. Judge Elkins recommended that Petitioner Jackson T.C.'s Petition for Writ of Habeas Corpus [ECF No. 1] be granted in part and that Jackson be provided with a bond hearing because his continued detention violates his right to due process under the Fifth Amendment. ECF No. 10. Judge Elkins applied the *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test to Jackson's due process claim. *See* ECF No. 10 at 3–9.[1]

[1] Page citations are to the ECF pagination appearing in a document's upper right corner, not to a document's original pagination.

Respondents[2] and Jackson both objected to the Report and Recommendation [ECF Nos. 11–12], triggering de novo review of the objected issues pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3).[3] Familiarity with the Report and Recommendation is presumed.

Jackson is a citizen of Venezuela. Pet. [ECF No. 1] ¶ 7. He entered the United States in October 2021 and was paroled temporarily into the United States on October 18, 2021. Pet. ¶ 15; ECF No. 6 ¶ 5. On November 21, 2021, Jackson was issued a Notice to Appear. ECF No. 6-2. Jackson was charged with being an alien present in the United States without being admitted or paroled pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). ECF No. 6-2 at 4. Jackson was also charged with being an alien not in possession of valid immigration

---

2 "Respondents" refers to Acting Attorney General Blanche, Secretary Mullin, Acting Director Venturella, and Acting Director Easterwood.

3 Jackson contends that Respondents' objections should be reviewed for clear error because they "generally re[p]eat the arguments from their Response." ECF No. 13 at 1 (citing *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015)). This characterization is not entirely accurate. Respondents react specifically to the Report and Recommendation and expand arguments made in their initial Response. *See* ECF No. 11 at 1–3. Even if Respondents' objections did merely repeat their previous arguments, I have previously noted that the governing statute does not require "specific" objections. *See United States v. Brown*, No. 24-cr-26 (ECT/LIB), 2025 WL 830077, at *12 n.13 (Mar. 13, 2025) (citing 28 U.S.C. § 636(b)(1)). And the Eighth Circuit has "repeatedly emphasized the necessity of *de novo* review," *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994), and has not endorsed "the exception recognized in some circuits that de novo review is not required 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (quoting *Belk*, 15 F.3d at 815). Respondents' objections trigger de novo review. *See United States v. Chapman*, No. 18-cr-250 (ECT/SER), 2019 WL 1487847, at *1–2 (D. Minn. Apr. 4, 2019) (discussing the issue at greater length).

documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id*. In June 2022, Jackson applied for asylum and withholding of removal under the Convention Against Torture. Pet. ¶ 15. Jackson's applications remain pending. *Id*. Immigration officials granted Jackson a work permit in August 2025. *Id.* Jackson's work permit remains valid through 2030. *Id.*

Jackson lived in a Chicago suburb with his family until October 2025, when he left and temporarily relocated to Minnesota due to Immigration and Customs ("ICE") Operation Midway Blitz. Pet. ¶ 17. On February 20, 2026, the Elk River, Minnesota, Police department arrested Jackson for criminal sexual conduct. ECF No. 6 ¶ 7; Pet. ¶ 20. Jackson was taken to the Sherburne County Jail. Pet. ¶ 20. Also on February 20, 2026, ICE issued an I-200 warrant for Jackson's arrest and an immigration detainer based on his ongoing removal proceedings. ECF No. 6-4; ECF No. 6-3; ECF No. 6 ¶¶ 8–9. The warrant and detainer were transmitted to the Sherburne County Jail the same day as their issuance, on February 20, 2026. ECF No. 6 ¶ 9. On February 23, 2026, Jackson was charged with two counts of criminal sexual conduct and one count of domestic assault. *Id.* ¶ 10. The charges against Jackson were dismissed on May 20, 2026. *Id.* ¶ 11. Jackson was released from Sherburne County Jail custody on May 20, 2026, and ICE officers immediately served Jackson with the I-200 warrant and placed Jackson under arrest. *Id.* ¶ 12; ECF No. 6-1 at 2. Jackson remains at the Sherburne County Jail. Pet. ¶ 21.[4]

I

[4] Jackson had an immigration master calendar hearing scheduled on June 16, 2026 but has not provided any additional information about that hearing.

Begin with a brief overview of the statutory framework. "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Except as provided by § 1226(c), which concerns noncitizens who are inadmissible or deportable because they committed or were charged with or sentenced for specified criminal offenses, the Attorney General "may release the alien on . . . bond of at least $1,500 . . . or . . . conditional parole." 8 U.S.C. § 1226(a)(2).

Section 1225 applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," who is "deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A); *see Jennings*, 583 U.S. at 287–88. In *Avila v. Bondi*, the Eighth Circuit held that § 1225(b)(2) applies not only to noncitizens detained at the border, but also to noncitizens present in the United States without authorization. 170 F.4th 1128, 1138 (8th Cir. 2026).

Jackson claims he is detained pursuant to 8 U.S.C. § 1226(a) [ECF No. 7 at 5–6; ECF No. 12 at 2–5], while Respondents contend Jackson is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) [ECF No. 5 at 6–7]. There is also evidence in the record indicating that Jackson is detained pursuant to § 1226(c). *See* ECF No. 6-3 at 1 (representing in Jackson's immigration detainer that Jackson "is subject to the detainer provision of the Laken Riley Act and is required to be . . . taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3)").

Jackson has not presented evidence demonstrating that he was arrested and detained pursuant to § 1226(a), rather than § 1225(b)(2)(A) or § 1226(c). In his Reply in Support of a Writ of Habeas Corpus, Jackson conclusorily states that "[b]ecause [he] is 'detained pending a decision on whether [he] is to be removed from the United States,' he is detained under 8 U.S.C. § 1226(a)."[5] ECF No. 7 at 5–6. Jackson offers no support for this proposition. *Id.* Jackson provides more detail in his Objection to the Report and Recommendation, where he argues that he is detained pursuant to § 1226(a) because he was "placed . . . into removal proceedings long ago, almost five years before his arrest" and concludes that "Respondents invoked § 1226(a) five years ago when they initiated removal proceedings." ECF No. 12 at 2–3.

Jackson seems to be arguing that he is detained pursuant to § 1226(a) because his removal proceedings were initiated many years before he was detained, unlike cases, such as *Avila v. Bondi*, where noncitizens were arrested and detained subject to § 1225(b)(2)(A)

---

[5] Jackson included 8 U.S.C. § 1226 (in addition to 8 U.S.C. § 1225) on his Petition caption but did not allege that he is detained pursuant to § 1226 in his Petition. *See* Pet. Jackson also did not specifically allege that Respondents failed to grant a bond hearing in violation of § 1226(a). *See id.*

and where removal proceedings were initiated only after their arrest. *See, e.g.*, *Avila*, 170 F.4th at 1132 (explaining that DHS arrested Avila and then initiated removal proceedings). Jackson contends that *Avila* does not apply to him because, in his case, Respondents are attempting to "switch detention schemes" from § 1226(a) to § 1225(b)(2)(A), which is a scenario that *Avila* does not address. ECF No. 12 at 4. But Jackson has not provided evidence demonstrating that he is detained pursuant to § 1226(a).[6] And, absent evidence that he is detained pursuant to § 1226(a), *Avila* precludes Jackson's argument that § 1226(a) applies simply because he was placed into removal proceedings long ago and was arrested and detained at a later time.

In *Avila*, the Eighth Circuit held that 8 U.S.C. § 1225(b)(2)(A) provides for mandatory detention for individuals who are present in the United States without having been admitted. *Avila*, 170 F.4th at 1133–38. Although *Avila* concerned a noncitizen who was arrested and then placed into removal proceedings, the Eighth Circuit did not restrict *Avila*'s application to this limited circumstance. *See id.* at 1132–38. Rather, the court's holding applies broadly to individuals present in the United States without being admitted. *Id.* at 1133–38; *see also Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *1-2 (N.D. Iowa Apr. 14, 2026) (holding that a petitioner who received a Notice to Appear in 2023 and who was arrested in 2025 was detained pursuant to § 1225(b)(2)(A), not § 1226(a), because the court was bound to follow *Avila*); *Montoya v. Chamberlain*, No. 26-cv-00259,

[6] Jackson's documents do not indicate that he was detained pursuant to § 1226(a) or that "Respondents invoked § 1226(a) . . . when they initiated removal proceedings." ECF No. 12 at 2–3.

2026 WL 1602930, at *3 (W.D. Mo. June 4, 2026) (stating that "a previous administration's decision to treat Petitioner under § 1226(a) and release him on bond does not remove the congressional authority, as recognized in *Avila*, permitting mandatory detention of Petitioner under § 1225(b)(2) at [a] later juncture" and noting that *Avila* "did not turn on [the] distinction" between a petitioner who had been previously detained and released on bond and one who was newly detained). *But see Souleimane C. v. Blanche*, No. 26-cv-2215 (LMP/JFD), 2026 WL 1180075, at *2–4 (determining that where petitioner was detained in 2025, where Respondents had earlier released petitioner on an order of recognizance authorized under § 1226, where Respondents arrested petitioner with an I-200 warrant, and where Respondents invoked § 1225 for the first time in response to petitioner's habeas petition, petitioner was detained pursuant to § 1226(a) but conceding that "[i]f immigration officials had elected to invoke [their] mandatory detention authority under 8 U.S.C. § 1225(b)(2), the Court agrees that [petitioner] would have been subject to mandatory detention" under *Avila*);[7] *Abbas v. Schneider*, No. 26-cv-00132, 2026 WL 1079292, at *3 (S.D. Iowa Apr. 17, 2026) (distinguishing *Avila* "because it involved the narrow issue of whether an alien who entered the United States in 2016 without encountering immigration officials is subject to mandatory detention under § 1225(b)(2)

---

[7] In *Venancio P.J. v. Blanche*, I held that an I-200 warrant that merely references § 1226 is insufficient, in the absence of other evidence, to prove a petitioner was arrested pursuant to § 1226 rather than § 1225(b)(2)(A). No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *1–2 (D. Minn. June 29, 2026) (explaining that the language on the Form I-200 warrant referencing § 1226 "identifies which officers are authorized to conduct the arrest" and "does not indicate that the arrest will occur pursuant to § 1226 or represent to [petitioner] that he is being arrested under that statute").

upon being arrested nine years later[,]" whereas the case before the court concerned a petitioner who "encountered immigration officials shortly after entering the United States[,]" who "was released (apparently pursuant to § 1226(a))," and who was "later granted work authorization that remains valid to this day").

Further, the *Avila* court expressly contemplated overlap between § 1225(b)(2)(A) and § 1226. The court noted, when discussing the Supreme Court's *Jennings*, 583 U.S. 281 decision, that "[w]hile *Jennings* states that § 1226 generally authorizes the Government to detain certain aliens already in the country, this does not preclude other statutory provisions—such as § 1225(b)(2)(A)—from also applying to such aliens." *Avila*, 170 F.4th at 1136 (citation modified). The overlap between § 1226 and § 1225(b)(2)(A) is not enough to prevent § 1225(b)(2)(A)'s application to noncitizens in cases where § 1226 might also apply. *Id.*

Because Jackson remains in the United States without lawful admission, he is an "alien seeking admission" under § 1225(b)(2)(A). *Id.* at 1133–34 (treating "seeking admission" in § 1225(b)(2)(A) and "applicant for admission" in § 1225(a)(1) as equivalent); 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."). Respondents could therefore detain Jackson pursuant to § 1225(b)(2)(A).

There is one additional point to mention here. Although neither Jackson nor Respondents argue that Jackson is detained pursuant to § 1226(c), Jackson's immigration detainer says that he is detained subject to this provision. *See* ECF No. 6-3 at 1. § 1226(c)

requires mandatory detention of individuals who committed, who are charged with, or who are sentenced for certain crimes. *See* 8 U.S.C. § 1226(c). With that in mind, I conclude that Jackson is not detained pursuant to § 1226(a), as he has not presented evidence demonstrating this, and is instead detained pursuant to either § 1225(b)(2)(A) or § 1226(c). It is not necessary to determine which of these two provisions Respondents invoked when they detained Jackson, for reasons explained below.

## II

### A

Respondents object only to the Report and Recommendation's due process analysis and reliance on *Mathews v. Eldridge*. *See* ECF No. 11 at 1–4. Respondents contend that *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) forecloses the application of *Mathews*. ECF No. 11 at 1–2 (citing *Banyee*, 115 F.4th at 931). I agree with Respondents. I addressed this issue in *Eliseo C. v. Blanche*, No. 26-cv-2282 (ECT/SGE), slip op. at 8 (D. Minn. June 29, 2026), ECF No. 12, and *Eliseo*'s reasoning applies here.

In *Banyee*, the Eighth Circuit relied on *Demore v. Kim*, 538 U.S. 510 (2003) to hold that "detention during deportation proceedings is constitutionally valid." *Banyee*, 115 F.4th 928, 931 (8th Cir. 2004) (citation modified) (quoting *Demore*, 538 U.S. at 523). The petitioners in *Banyee* and *Demore* were detained pending deportation proceedings pursuant to 8 U.S.C. § 1226(c). *See Jennings*, 583 U.S. at 303 ("Section 1226(c) . . . states that the Attorney General 'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." (quoting 8 U.S.C. § 1226(c)(1)). In *Eliseo*, I concluded that, in addition to their application to § 1226(c),

*Banyee* and *Demore* are controlling in cases where a petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). *Eliseo*, slip op. at 8 ("Both 8 U.S.C. § 1225(b)(2) and § 1226(c) provide for *mandatory* detention pending deportation proceedings . . . . The only difference is that § 1226(c) is limited to noncitizens who have committed certain offenses while § 1225(b)(2) is not. *Banyee* does not indicate that its reasoning might be limited to noncitizens detained pursuant to § 1226(c).").

Here, it does not matter whether Jackson is detained pursuant to § 1225(b)(2)(A), as the Government claims [ECF No. 5 at 6–7], or § 1226(c), as was checked on Jackson's immigration detainer [ECF No. 6-3 at 1]. Mandatory detention under § 1225(b)(2)(A) or § 1226(c) is acceptable "for as long as deportation proceedings are still pending." *Banyee*, 115 F.4th at 933; *see also Eliseo*, slip op. at 9. Jackson's procedural due process claim therefore fails.

B

Judge Elkins determined that Jackson's detention violates due process and did not reach Jackson's other arguments as a result. *See* ECF No. 10 at 8 n.3. In his Objection, Jackson requests consideration of his Fourth Amendment claim. *See* ECF No. 12 at 5–6. Because Jackson's detention does not violate due process, Jackson's Fourth Amendment argument will be addressed.

Jackson contends that his arrest violated the Fourth Amendment because "there is no evidence of a valid warrant in the record, and . . . ICE did not comply with the statutory requirements to effect a warrantless arrest." ECF No. 12 at 6. Jackson details his Fourth Amendment arguments with more specificity in his Reply, where he claims that because

Respondents failed to "provide evidence that the alleged section chief who signed the warrant in the record is a Law Enforcement Support Center Station Chief," he was not arrested with a valid warrant.[8] *See* ECF No. 7 at 6; 8 C.F.R. § 287.5(e)(2)(li).

Jackson's argument is unpersuasive. Jackson does not cite any authority requiring Respondents to prove that the officer who signed the warrant is a Section Chief within the Law Enforcement Support Center. *See* ECF No. 7 at 6. Jackson claims that an "administrative 'warrant's lack of a signature by an authorized, issuing immigration agent renders the warrant legally void'" [ECF No. 7 at 6] and relies on *Pedro R.P. v. Bondi* for this point, No. 26-cv-1323 (ECT/DJF), 2026 WL 473140 (D. Minn. Feb. 17, 2026), *R. & R. adopted*, 2026 WL 478607 (D. Minn. Feb. 19, 2026). In *Pedro R.P.*, however, the warrant at issue contained no signature *at all*. *See id.* at *4 (noting that "Respondents' warrant *lacks any signature or name* in the first part, i.e., the part that authorizes arrest" (emphasis added)). Here, Jackson's warrant is signed by an "Estoque – Section Chief" [ECF No. 6-4 at 1], and this is sufficient to demonstrate that the warrant complied with 8 C.F.R. § 287.5(e)(2)(li), which lists a "Section Chief, Law Enforcement Support Center" as one of the immigration officials who may issue a warrant.

Jackson also argues that "there are factual inconsistencies which suggest the warrant . . . may not be valid." ECF No. 7 at 7. I have previously found evidence provided by Respondents to be unreliable where the evidence contained serious factual discrepancies

---

[8] In his Petition, Jackson alleged that he was never served with a warrant. *See* Pet. ¶¶ 22, 62. Respondents' declaration, however, states that Jackson was served with the I-200 warrant on May 20, 2026. ECF No. 6 ¶ 12. Jackson does not raise this issue in his Reply [ECF No. 7 at 5–11] or in his Objection [ECF No. 12 at 5–6].

and was "internally inconsistent or incomplete in several important respects." *See Jaminton R.B. v. Mullin*, No. 26-cv-3091 (ECT/JFD), 2026 WL 2350324, at *1–4 (D. Minn. Aug. 13, 2026). In *Jaminton*, for example, it was unclear when Jaminton was arrested, where he was arrested, and who arrested him. *Id.* at *1–2. It was also not clear "whether or when" Jaminton was served with a warrant or why officers stopped him in the first place. *Id.* at *2–3. These discrepancies meant that Respondents' evidence "did not credibly rebut the Petition's allegation that Jaminton was arrested without a warrant." *Id.* at *3.

Here, however, there are minimal factual discrepancies, and the discrepancies that do exist are insufficient to cast doubt on Respondents' evidence. Jackson identifies only one "factual inconsistenc[y]." *See* ECF No. 7 at 7–8. The I-213 Record of Deportable/Inadmissible Alien states that "Detention Officer Carey issued an I-200 Warrant of Arrest," while the I-200 warrant itself was issued by an "Estoque – Section Chief." *Compare* ECF No. 6-1 at 2 (noting that "Detention Officer Carey" issued the warrant), *with* ECF No. 6-4 at 1 (warrant containing the signature of a Section Chief "Estoque"). Despite containing the signature of a different official, the warrant is fully completed. *See* ECF No. 6-4 at 1. The warrant is signed by a "Section Chief," dated, and time-stamped. *See id.* The "Certificate of Service" portion is also filled out and signed. *Id.*

Although not noted by the parties, there is also a minor discrepancy between the I-213 Record and I-200 warrant related to when the I-200 warrant was issued. The I-213 Record states that a deportation officer encountered Jackson on February 21, 2026 and then

issued a warrant. ECF No. 6-1 at 2. The warrant, however, is dated February 20, 2026, not February 21, 2026. ECF No. 6-4 at 1. The detainer is also dated February 20, 2026 and was signed on February 20, 2026. ECF No. 6-3 at 1–2. Respondents assert in their declaration that the warrant was issued on February 20, 2026. *See* ECF No. 6 ¶ 9.

The discrepancies between Jackson's I-213 Record and I-200 warrant, unlike the discrepancies in *Jaminton*, are minor. Respondents' evidence is otherwise consistent. Further, Respondents appear to have followed the proper procedures for issuing and executing the warrant. Jackson's removal proceedings commenced prior to the issuance of the warrant. *See* ECF No. 6-2 (Jackson's Notice to Appear, dated November 21, 2021); ECF No. 6-4 (Jackson's warrant, dated February 20, 2026); *Islamuddin v. Blanche*, No. 26-cv-3340 (ECT/JFD), 2026 WL 2546280, at *2 (D. Minn. Aug. 28, 2026) (collecting cases stating that a "Form I-200 warrant that precedes a Notice to Appear is invalid"). The warrant and detainer were lodged with the Sherburne County Jail. *See* ECF No. 6 ¶ 9. And, when Jackson was released from custody, he was served with the warrant. ECF No. 6 ¶ 12. Because the discrepancies are minor and because Respondents followed the proper procedure for the warrant, Jackson's Fourth Amendment claim fails.[9]

[9] Jackson also alleged *Accardi* violations in his Petition. *See* Pet. ¶¶ 74–79. Judge Elkins did not rule on the *Accardi* doctrine, and Jackson does not raise *Accardi* in his Objection. *See* ECF No. 10; ECF Nos. 12–13. In his Petition, Jackson claimed that he was arrested "prior to the issuance of a Notice to Appear" and "without a warrant" and that these violations, in combination with Respondents' failure to comply with the warrantless arrest guidelines, demonstrate that Respondents violated their own regulations. *See* Pet. ¶¶ 74–79. Because, as discussed above, Respondents followed the proper procedures for arrest, Jackson's *Accardi* doctrine claims fail.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Respondents' objections [ECF No. 11] are **SUSTAINED** as described above;

2. Petitioner's objections [ECF No. 12] are **OVERRULED** as described above;

3. The Report and Recommendation [ECF No. 10] is **REJECTED** as described above; and

4. Petitioner Jackson T.C.'s Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 10, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court